Nathan Holcomb, Appellant, Towns for the Sake of Brevity This case arises from New York Senate Bill 7194, which contemplated creation of an opioid settlement fund administered by the state. The bill purported to retroactively extinguish some, but critically not all, of the claims by state subdivisions, including, quote, each county, city, town, village, or special district in the state of New York. The cutoff date for extinguishment of claims was June 30, 2019, and that date set an arbitrary line between the subdivisions whose claims would be extinguished and those whose claims would survive. When the bill was introduced, it was plain to all which subdivisions the bill would favor and which it would not, because it was a matter of public record which subdivisions had filed claims prior to the cutoff date. The bill favored, for example, Nassau and Suffolk Counties. I get all of this. This is all kind of a merits argument, right? It's about why you think it's arbitrary or why it might be invalid, but the question really here is whether you can sue over that, right? That's correct. So we're appealing on two issues. The first is the issue of whether the towns had capacity to sue under New York state law. The second is whether the towns had constitutional standing to bring constitutional claims against the state. I would like you to start with the constitutional standing first and explaining why that would exist. As far as I can tell, and you can correct me if I'm wrong, other than under the supremacy clause, neither we nor any other federal court has allowed a municipality to sue a state in federal court on a constitutional violation. No federal decision that we've found has facts like these, which I think it's worth emphasizing how stark and unprecedented the facts are. The towns had a property interest in claims and that property interest was- The towns had lots of property interests, right? That can't possibly be the dividing, the exception when a municipality could sue, they could sue all the time then, right? The- Actually, in the city of Trenton, the Supreme Court specifically said that they rejected this distinction for the purposes of standing to the Constitution that because it involves a property interest that somehow a municipality suddenly has capacity to sue. Didn't the Supreme Court specifically reject that 100 years ago? In city of Trenton, the property interest was different. That was a property interest in water rights in the Delaware River. And the state of New Jersey had passed legislation that affected those water rights. City of Trenton sued- So which property rights then, which property rights would you have standing to sue on? If it's not all property rights, which property rights? Property rights in claims here, the property rights at issue here are claims. Now, if the question is where would the boundary lie, I think this is a clear case where it's just property interests that were not affected by legislation that went to policy in the way that an allocation of water rights would, but legislation that just took property rights away. So you're saying that the proprietary capacity analysis goes into the standing analysis, that if you're holding property in a proprietary capacity, you would have standing to protect it, right? Yes, and the- All right, so we can talk about that, but I just wanted, so there's a predicate question about the standing, which is, you know, it's true that there are these old cases where we talk about this in terms of standing. But in terms of thinking about what standing really is, which is injury causation and redressability, you have injury causation and redressability, right? You've been deprived of your claim. It's caused by what the state legislation, and if the court invalidated it, it would redress the injury, right? So if the 14th Amendment doesn't actually protect your interests, that seems like a merits question. Yes, and the decisions that we've cited do address that distinction. Is this really a standing issue, or is it just a- Okay, so I get that, and it seems to me it's even right. But if, in fact, we were to say, well, the mistake here was conceiving of this as standing as opposed to a merits question, were we to remand, it would just mean that the district court would just say, well, in light of the exact same argument, now you lose on the merits because the 14th Amendment doesn't protect. Yeah. It doesn't protect the interest. So we have to have some reason for thinking that you can pursue the claim. Yes. And so what do we have there? I mean, you just conceded a moment ago, you think that a federal court hasn't allowed a city to sue a state. But I thought your argument was that you have states, cases like Gamillion, or like Romer, or whatever, where municipalities are suing the state. Yes, and I think the focus on the Gamillion opinion is important. With respect to Hunter, and to the point as to- And Gamillion had individual appointives as well, right? Yes. And they were suing as well. Isn't that a big distinction? Yes, it is a distinction, but this case asks the court, demands that the court confront these facts, and in Gamillion, the court addressed Hunter. This is obviously like years after- Suppose the state passed a law that shortened a statute of limitations. Could a municipality sue, would they have standing to sue the state for shortening a statute of limitations, thereby potentially extinguishing claims? Yeah, that is not this case. That bears some resemblance, actually, to the World Trade Center cases. But that is not this case. This case- Why? That would be, you're losing your claim, right? If you have a property right in a claim, which I think is your argument here, if your claim is extinguished because of a reduction in the statute of limitations. Yeah, I mean, that's a change to substantive law governing the claims. Statute of limitations is a substantive affirmative defense. That would be a change in the substantive law. And I do want to come back to the point about Gamillion, because the Gamillion court specifically cited Hunter v. City of Pittsburgh if City of Trenton had sort of erased the relevance of the distinction between property that's held- So in Gamillion, the Supreme Court says, even in Hunter, we said that the states don't have the power to interfere with the municipality's property. You know, an unlimited authority to interfere with it. There might be some kinds of property where they do have a claim against the state, right? Is that what you were about to say? Yes. Right? That that left the- In Gamillion, the court says legislative control of municipalities, no less than other state power, lies within the scope of relevant limitations imposed by the Constitution. Right? So I guess your position is that in Romer, right, the court does observe this, that like a bunch- that Denver had passed a law, or a local ordinance protecting gays against discrimination. The state law eliminated that, and Denver sued to protect its interest in its legislative authority, right? Yes. The question is whether, in the absence of individual plaintiffs, it could have maintained that suit or not. Yes, and in Tweed, this court cited both Washington and Romer as precedents that were relevant to standing. I take your point that the distinction here between standing and the merits of a constitutional claim- I just, I don't understand. Gamillion was in 1960. We've said multiple times since then, including in the city of New York v. Richardson and Aguayo v. Richardson, that, quote, political subdivisions of a state may not challenge the validity of a state statute under the 14th Amendment, period. So, I don't understand how you can interpret Gamillion somehow to have changed the landscape, at least in this circuit, with respect to your ability to sue. The precedents that this court- Isn't that pretty clear? They may not challenge. In the other case, the city lacks standing to assert constitutional claims against the state, period. Yeah, and I would point the court to the Gamillion court's statement, and this is in reference specifically to city of Trenton, which the Attorney General has emphasized, that particularly in dealing with claims under broad provisions of the Constitution, which derive content by an interpretive process of inclusion and exclusion, it is imperative that generalizations based on and qualified by the concrete situations that gave rise to them was not- You're saying that we should understand these statements in light of the case, the context in which it was decided. Correct. And in the tweet, I suppose what's interesting about it is there's that footnote that says, we have said that there's no standing to pursue claims against the state. But that footnote appears in an opinion that allows subdivisions to pursue claims against the state, right? And the point of the footnote was to say the context here is different from the context in which we'd said that before. Correct, and the- Although that footnote does say that the distinction there is, they're not suing to vindicate their own rights, but the rights of the citizens. So that's not what you were doing here, right? That's correct. So does that mean that you are controlled, like you still don't get to sue? You, in this case, the towns are not suing to vindicate the rights of their citizens. They're suing to vindicate the proprietary rights of the corporation. Yeah, they're just pursuing a damages claim for money, like any other right of plaintiff. So I guess my question is, in Tweed, didn't we suggest that subdivisions get to sue the state when they are vindicating the constitutional rights of their citizens? Well, in Tweed was not a constitutional claim. That was a statutory claim. So that was a supremacy clause. Like a part of the Constitution, yeah, but okay. Yeah, it was a supremacy clause case. This is not a supremacy clause case. However, it raises a question that, on our reading of Tweed, the Second Circuit left open, which is, will there be standing, is there a constitutional claim in a case where a municipality has a property interest that is just extinguished? Those facts are not addressed by this Court's precedents, for example, in Aguayo, in Richardson. I do take the point that if the Court draws the most expansive interpretation of dicta, those precedents would suggest, oh, this issue has already been resolved. But I think the caution that the Gamillion Court made is on point here, both for Supreme Court precedents and for the Second Circuit. Thank you very much. You have three minutes in rebuttal. We'll hear from Mr. Yanni. May it please the Court, Stephen Yanni for the New York Attorney General. The Court should affirm the dismissal of plaintiffs' claims because, as towns created by the state legislature, they lack capacity and standing to bring this constitutional challenge. To begin with the question of standing that we've been discussing, both City of New York and Aguayo held that political subdivisions may not challenge the validity of a state statute under the 14th Amendment. And my opponent all but concedes that this Court would have to overrule those precedents in order to rule for him in this case. But there's no basis to do so. In fact, this Court in Tweed reaffirmed that City of New York and Aguayo remain good law. You mean the footnote that says we've said that there isn't standing? That's correct. Well, so, you know, I'm a little puzzled by that. I mean, it says, as I said before, I mean, do you really think that this is a question of standing? So we think of standing as injury causation and redressability. They alleged injury. They had a claim that's now been destroyed. It's caused by the state statute. And if the state statute is invalidated, they get it back. That's injury causation and redressability. If the 14th Amendment doesn't actually give them a cause of action to protect that interest, that's a merits question, isn't it? If the Court views it that way, I think that would be a merits question. But I think the precedent of City of New York and Aguayo would still control, because the underlying principle is that- Those pieces are from the 70s, right? So it's before the Supreme Court said in Lexmark and whatever, we should be very precise about what's actually standing and what's the merits. We used to use the word standing all the time to refer to things that are not truly standing and so on. So it's from an era where we use the word standing to refer to things that are not actually constitutional standing. Well, I think the point I mean to make is that the underlying principle is that the municipalities don't have enforceable constitutional rights vis-a-vis the state. And that's the principle animating all of these decisions regardless of whether- They have no rights at all. So I guess, so thinking about the constitutional rights, so you're saying that Romer would have been decided differently if there weren't individual plaintiffs? So let's take the facts of Romer and apply it to New York. So if the town of Hempstead passed a local ordinance that protects gays from discrimination, and the state of New York passed a law that says no ordinance protecting gays from discrimination is valid, you're saying Hempstead could not sue New York. And Hempstead says, we think you're eliminating our legislative powers based on an invidious purpose and it's unconstitutional. You're saying Hempstead would not be able to challenge that. Under current Supreme Court precedent, I would say no, but I think it's also distinguishable on the basis that in Romer, the plaintiffs there were trying to enforce individual rights and that's not what we have here. Instead, we have municipalities trying to enforce their own- They're not individual rights, right? So the way I'm describing it is, the municipality has a local power to pass legislation and the state is eliminating that power or limiting it to some extent in a way that's alleged to be unconstitutional. They're saying they can't say, you've taken away our legislative power, our local legislative power in an unconstitutional fashion. Well, I think that the nature of the constitutional claim in Romer is that it impacted the equal protection rights of the town's citizens. Here, we don't have a claim like that. Wouldn't Joe Benashi's example also implicate the rights of the citizens? It would still implicate the rights of the citizens. That would be a different scenario, potentially, right? It would be a different scenario. A different scenario from this scenario. It's different from this scenario because here- This is not about the rights of the citizens, you're saying? That's exactly right. And their unique concerns arise- So we can talk about how the standing interacts with the proprietary thing because it does seem like, you know, the interpretations seem to be at cross purposes. Even though the New York Court of Appeals has told us they start from the same original doctrine, it seems like one is about representing your citizens and one is about only your proprietary interests and not representing your citizens, and it seems to be a contradiction. But before I get to that point, I guess I just want to explore the proprietary capacity. So, you know, there must be some funds that a city could hold in a proprietary capacity where they'd be able to challenge interference, right? So I think- So, like, I guess I have this- So if Hempstead just has a bank account and they deposit the town funds in the bank account that they use at their discretion to pay for town expenses, a New York State pastoral that says the town of Hempstead has to give us all of the money from their bank account, would Hempstead have the capacity to sue the state to say you can't do this? They may well have capacity, they may still may not have standing to assert constitutional claims. I said I wanted to separate the two things, so just in terms of capacity. So if the state says we get to take all the money out of Hempstead's bank account, because that's a proprietary capacity, they would get to sue over that. Well, I think the reason they would get to sue is because it fits within the specific proprietary interest exception under New York law, which is narrowly defined to include proprietary funds to which the municipality has a statutory interest. And New York law... What's the statutory interest? I mean, the statutory interest in that case is just that Hempstead is a corporation and corporations get to open bank accounts and put money in them, right? So I think it would depend on the nature of the fund that's being seized. The New York law provides that towns may hold open various different funds and requires them to keep certain amounts of money in there for a specific purpose. If it relates to a fund in which they have a statutory interest, there would be capacity under that exception. But the New York case law is also clear that laws that merely require towns to expend funds, for example, don't fall within that exception. The distinction seems to be that if you open up a bank account, you're holding it just the way any private corporation might have a bank account and hold funds. That's proprietary. But if you're fighting over the public policy question about how highway development funds could be distributed across the state, you don't have the capacity to sue over that, right? I think the relevant distinction is one of legislative intent. The reason that the proprietary interest exception is so narrow is that we can, or is defined the way it is, is that where the state has passed a statute vesting a municipality with the right to a specific fund, we can infer that the state would have wanted to provide the town with some recourse to be able to protect that interest. And this is true of the other exceptions as well. Wait a second. You just said a moment ago that if the state is trying to take away all the money out of Hempstead's bank account, they could sue over that. Well, it would depend on the nature of the fund and whether the fund is protected by- So you're saying if the state legislature passed a law that says we're going to take all the money out of the state, sorry, the town bank account because we want to, you know, throw a party for ourselves, like a private interest, then they could sue over that. But if they said, because we think it's in the interests of the state of New York, if the state has the money and not the town of Hempstead, because we could spend it on better things, then they would not be able to sue? No, I don't think the capacity question is tied to the state's underlying motivation. Right, so you said it's about legislative intent, but it's not really about legislative intent. It's about the capacity in which the town is holding the property. No, I would disagree with that. I think the reason that it's about legislative intent is that towns, as a common law matter, the background rule is that they don't have standing to assert any challenges to state legislation. And the question is whether through some statute or provision of the state constitution, we can infer and intend to allow such a claim to go forward. So the key point is whether there is a statutory entitlement to a specific fund. And in any event, we're really a far cry from that here. So you're saying that you only get to challenge state legislation if it's clear the state legislature would want you to challenge it? Yes, or some provision of- So then the answer to my question is that if the New York state legislature passed a law that says we want to take away all the money in Hempstead's bank account, I mean, state legislature passed that law, so they didn't want it to be challenged. So you would not get to challenge it. Well, I guess- The state legislature can raid the bank accounts of all of the municipalities in the state of New York. The question is whether there's a pre-existing statutory entitlement that the town has that it's able to sue over. That it could say, and that was what would give rise to its ability to sue. Well, it has that, right? Because if somebody else stole money out of their bank account, they could sue that person because they're taking their money, right? So the default rules would be a corporation, whether it's a municipal corporation or some other kind of corporation, is entitled to open up a bank account and keep its money in there, and people can't take it, right? So that is the default. And so in my hypothetical, the state legislature comes in and says, we're taking away your money. And you're saying because the state legislature did that, the town doesn't even get to sue over it. Yes, I think that's the key distinction is because the state legislature has power to enact laws that affect the property interest of its municipalities. That's in fact contemplated by the New York constitution itself. There's a separate home rule provision of the constitution that provides certain- So like all of these states, New York City has a large pension fund where they hold a bunch of cash and securities and so on that they're gonna use to pay their employees. If the state legislature says, all that money and all those assets now have to be transferred to the state, New York City would not get to sue over that. The state just gets to do that. Well, my guess is there a specific statutory authorization for the city to hold such a fund. If the state legislature passes a new law that says you have to transfer all the money, wouldn't that override the prior legislation? That's not how- You're saying if there's a preexisting legislation, you'd get to challenge the subsequent legislation on the basis of the prior legislation? I mean, it doesn't make any sense. Yes, that's how the New York court of appeals has defined the exception. It's clarified repeatedly, that there needs to be a nexus to a specific fund and that there's a preexisting vested statutory entitlement to that fund. But under all those hypotheticals, regardless how they turn out, under federal law, under federal constitutional law, under none of those scenarios, under our binding precedent, would a political subdivision have capacity, standing to sue for federal constitutional violations? Is that your position? That's absolutely correct. And if the court- That's based on the fact that we have said, and the Supreme Court has said, that political subdivisions of the state just don't- they're under the state. They don't have the federal capacity to sue in federal court for federal violations, other than the limited exception in time that we said for a supremacy clause preemption type issue. Yes, that's correct. And if the court resolves that issue in our favor, it doesn't even need to reach the state law capacity. So how does that make a lot of sense? The Supreme Court has told us, actually, that municipal corporations have this kind of dual function. That in some sense, they're creatures of the state, right? That they are a subdivision and so on in political and governmental matters. But in another sense, they are persons that have the capacity to sue and be sued because they're corporations, right? It's true that they have the capacity to be sued and also are- No, I understand. And so the due process clause says, you know, persons are entitled to the due process of law and so on. So why wouldn't it be the case that we should understand, you know, the way the Supreme Court has talked about this to say, to the extent that the municipality is a person, meaning it's acting in its corporate capacity and it can sue and be sued and have property and whatever. It has rights predicted by the Constitution and it can exercise them. To the extent that it's a political subdivision, it's just a creature of the state in governmental matters and public policy matters and so on. It can't challenge the state. So I have two responses to that. The first problem is that the Supreme Court has directly rejected this distinction in the city of Trenton, the proprietary and governmental distinction that said that that provided no basis for a municipality to assert 14th Amendment claims against the state. And the second is a structural constitutional problem is that if there's no limiting principle here to the proprietary interest that plaintiffs are asserting, it wouldn't be sustainable to allow any, to allow municipalities to assert these types of constitutional claims because it would interfere with all manner of state resource allocation and internal state governance. So I think the reason that the Supreme Court has limited municipalities' ability to bring claims in this way is to respect that. But this is a question of internal state governance, right? Like this is the town of Hempstead has a claim against a third party, right? It's got a legal claim against a third party. This is not a kind of a case where you're fighting over how, what the public policy should be that affects the state of New York, right? This looks more like raiding the bank account of the municipality, doesn't it? Well, I would disagree, Your Honor. I mean, this was absolutely a state policy matter. The state was trying to negotiate a settlement with various opioid defendants and trying to maximize its settlement in order to obtain as much funds as possible for the citizens of the state. And it determined that this was the best method to do that and to secure the best settlement possible. So it absolutely was a matter of statewide concern. Well, but that just means that in order to, by extinguishing the municipality's power to sue in this context, the state just could offer more to the counterparty in its own negotiation, its own settlement negotiation, right? I mean, that was the under... And so they decided by extinguishing them, we could get a bigger settlement from the counterparty because we could offer them more. And so we'd make, we'd get more money in the settlement, right? That was the underlying motivation for the statute was to extinguish underlying claims of municipalities in order to maximize the settlement that the state could use to then use it for opioid abatement for the citizens of New York. But I think the main point is that the... It doesn't really seem like whether the state is allowed to extinguish the claims of third parties for the purpose of increasing its leverage in its own litigation settlement negotiations. It just doesn't seem like that's the same thing about getting into public policy questions, about how the state of New York should be governed and so on, right? I mean, normally if a settlement agreement purported to extinguish the claims of third parties, the third parties would be able to come in and challenge that, right? Well, I think the problem is that the municipalities don't have any enforceable rights vis-a-vis the state. So the ultimate motivation for the underlying state action really isn't relevant here because there's no underlying constitutional right to assert. All right, thank you. Mr. Holcomb, you have three minutes in your book. Thank you. I'd just like to make just a few points in response. The first is that I think we've seen a shift in the Attorney General's position with respect to Romer and Washington. As I understood the argument in the briefs, it was that, well, the Supreme Court just didn't get to the issue of whether there was standing or alternatively whether there was a claim because there were non-municipal plaintiffs. So even though it's right there in the caption, Washington versus a school district, that the Supreme Court just missed the issue of whether the named party to the action was an appropriate party. What those cases established was that there are constitutional rights that a municipality can assert. And this court acknowledged that fact in Tweed, that that was an implication of those opinions. And the court in Tweed addressed the Supremacy Clause issue, which if the Attorney General's position were right, and there just is no constitutional claim that a municipality can bring against its creator state, then those decisions would have been mistaken in Romer and in Washington. And in the- Well, they would have been mistaken only insofar as there wasn't a dismissal of the municipal plaintiffs. But since there were individual plaintiffs, it could have proceeded on that basis, right? Yeah, there could have been a fix to that issue that would have allowed a case to proceed, but it wouldn't have been a Washington school district that was the party to that case. And I think there's a reason that this court cited those decisions in Tweed. Right, so we seem to think that those cases were municipal entities suing the state. Correct. And in Tweed, the court acknowledged that. There would be no reason to have cited Romer and Washington. Well, anyway, I mean, the state did just say, basically, that if the state legislature decides to appropriate all of the funds in Hempstead's bank account to the state, then Hempstead wouldn't get to sue. And if Hempstead passed an ordinance protecting gays from discrimination and the state passed a law eliminating that ability to pass such an ordinance, this municipality wouldn't get to sue. So that's their position. I mean, do we know that they would get to sue in either of those cases? Well, first, those aren't the cases that we have. I think that they're more illustrative, right? So the idea is if in Romer there weren't individual plaintiffs, it should be that the municipality doesn't get to sue. Yes, and I mean, there's also, we've cited to some law review articles in our brief that go into some hypotheticals. I don't think that those articles are, it isn't necessary, as is urged in some of the academic commentary, that the court overrule any precedent. All we're asking is that the court- I don't want to overrule precedent. I kind of thought that you would have thought that that was an easier case. Yeah. If the state just wanted to take all the money out of a town's bank account, obviously, you'd at least get to challenge that. Yes, although the, I agree. And although I don't think it's that- How do we know that? I don't think it's that much- I want to respond directly to the question. All right, whatever you want to say, however you want to answer, just tell me the point you want to make. Yeah, so we presented in our opening brief various hypotheticals along the lines that you've articulated here, and the state's response, similar to the response to an argument, was, well, there are statutes that address that so that that will not happen, which, in our view, those are indications that the legislature has recognized that municipalities have property rights that merit respect, and the legislature has implemented the constitutional rights and legislation. It's up to the legislature of a state to recognize whatever rights they want to recognize. And in fact, there's also a state constitution, which the district court declined supplemental jurisdiction, so you can sue under the state constitution as well, right? Aren't you claiming this violates the New York state constitution as well? Yes, yes, although, I mean, and as your honor has pointed out, I mean, that's, the district court did not assert supplemental jurisdiction, so on appeal, we're not appealing that. So if a state legislature gives rights to a political subdivision and violates those rights in some way, or violates their rights even under the United, under the New York state constitution, there's plenty of remedy for you. Yeah, there may be another remedy, that the issue that this court now has to decide, because it's the issue that's presented on appeal, one of the two, but that the issue that this court has to decide is where we've asserted federal constitutional claims, and where those claims relate to, you know, something as brazen as just taking a property away from a municipality is their constitutional claim. We understand that. All right, thank you both. We'll reserve the decision. Have a good day.